IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD A. BLANE,
     Petitioner,

v.                          Case No.  3:10cv350/LC/CJK

KENNETH S. TUCKER,[1]
     Respondent.

_____

ORDER and
REPORT AND RECOMMENDATION

     Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 1). Respondent filed an answer, submitting relevant portions of the state court record. (Doc. 20). Petitioner replied. (Doc. 25). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

_____

     [1]Kenneth S. Tucker succeeded Edwin G. Buss as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent. Fed.R.Civ.P. 25(d).

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in the Circuit Court for Walton County, Florida, with Possession of a Controlled Substance (Methamphetamine) (Count I), Escape (Count II), Battery on a Law Enforcement Officer (Count III) and Petit Theft (Count IV). (Doc. 20, Ex. A, pp. 23-24).[2]  Petitioner went to trial on Counts I and II, and was found guilty of both counts (as charged) by jury verdict. (*Id.*, p. 113).  The State nolle prossed Counts III and IV. (*Id.*, p. 152).  The facts adduced at trial, viewed in the light most favorable to the prosecution, follow.[3]  (Ex. B, pp. 1-149).  On September 28, 2004, Deputy Howell of the Walton County Sheriff's Office received a "pick-up order," signed by Judge Kelvin Wells, to take petitioner into custody. (*Id.*, pp. 27, 34).  Howell went to petitioner's residence to find him. (*Id.*, p. 27).  Deputy Howell was accompanied by Cameron Johnson, a correctional officer at the Walton County Jail. (*Id.*).  Deputy Howell located petitioner inside petitioner's residence.  Petitioner was in a bedroom, lying on the floor behind a table, with a camouflage jacket draped over the table in an attempt to conceal himself. (*Id*., p. 35).  Deputy Howell advised petitioner that he was under arrest and placed petitioner under arrest. (*Id*., pp. 28, 35).  Petitioner complained of his arm hurting, so Deputy Howell handcuffed petitioner in front.   Deputy Howell patted petitioner down and discovered three vials of

---

[2]All references to exhibits will be to those provided at Doc. 20, unless otherwise noted.

[3]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this Court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a part in the Court's analysis.

methamphetamine in petitioner's pants pocket. (*Id*., pp. 28-29). As Correctional Officer Johnson was escorting petitioner to the patrol car to take petitioner to jail, petitioner shoved Johnson and took off running. (*Id*., pp. 32-33, 37, 53, 62). Officer Johnson chased petitioner, but petitioner got away. (*Id*., pp. 37, 62-65). Petitioner was found on January 14, 2005, in Bainbridge, Georgia, where he was arrested and charged. (*Id*., pp. 96-97).

On October 10, 2005, petitioner was adjudicated guilty and sentenced to concurrent terms of five years imprisonment on Count I (Possession of Methamphetamine) and fifteen years imprisonment on Count II (Escape). (Ex. A, pp. 114, 136-39). Petitioner's judgment of conviction was affirmed on direct appeal on October 20, 2008. *Blane v. State*, 992 So. 2d 252 (Fla. 1st DCA 2008) (Table) (copy at Ex. F).

On September 24, 2009, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising six grounds for relief. (Ex. G, pp. 1-20). Petitioner later amended his motion to add a seventh ground. (*Id*., pp. 161-64). The trial court denied relief without an evidentiary hearing. (*Id*., pp. 194-98). The Florida First District Court of Appeal ("First DCA") per curiam affirmed without written opinion on June 18, 2010. *Blane v. State*, 38 So. 3d 134 (Fla. 1st DCA 2010) (Table) (copy at Ex. H). The mandate issued July 14, 2010. (*Id*.).

Petitioner filed his federal habeas petition in this Court on September 8, 2010. (Doc. 1, p. 1). The petition presents four grounds for relief, all grounded in petitioner's contention that trial counsel was ineffective for failing to move to dismiss the charges and to suppress evidence seized from petitioner's home and person, on the grounds that they were the fruit of an illegal search of petitioner's home. (*Id*., pp.

3-5).  Respondent concedes that petitioner exhausted his claims by presenting them in his Rule 3.850 proceeding, but argues that petitioner is not entitled to federal habeas relief because his claims are without merit.  (Doc. 20).

## LEGAL STANDARDS

### Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg,

appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.

---

and Breyer.

*Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129

S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*,

537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of

the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) the Supreme Court set out a two-part inquiry for ineffective assistance claims. A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. 466 U.S. at 687, 104 S.Ct. 2052. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

DISCUSSION

Ground One          Counsel Was Ineffective For Failing To File A Motion To
                    Dismiss The Charges (Or A Motion For Judgment Of Acquittal)
                    Based On An Illegal Search Of Petitioner's Home

Petitioner claims defense counsel was ineffective for failing to file a motion to dismiss the charges or for a judgment of acquittal asserting that Deputy Howell's and Officer Johnson's search of petitioner's home was illegal. (Doc. 1, p. 3). Petitioner alleges in support of this claim that Howell and Johnson came to his home based on a pick-up order for bond revocation that did not include a search warrant. Petitioner asserts that the individual (Douglas Tucker) who invited the officers to enter and search petitioner's home was merely a "visitor", and that Tucker's consent to the officers' entry into petitioner's home was not valid because "[a]t no time did police question the visitor to establish if said visitor had authority to allow police to enter petitioners [sic] home or to give police permission to search petitioners [sic] residence." (*Id*., pp. 3-4). Petitioner argues that "[h]ad counsel moved for the suppression of any evidence that was seized in this illegal search the court would have been compelled to grant such a motion and but for counsel's failure to object to the introduction of this illegally obtained evidence and move for a suppression

hearing the outcome of the proceedings would have been different." (*Id.*, p. 4).

Petitioner presented this claim to the state courts in his Rule 3.850 motion as "Issue One". The state court denied relief for the reasons (including record attachments) set forth in the State's Response to petitioner's motion. (Ex. G, p. 196 (adopting and incorporating as the court's findings of fact and conclusions of law the "State's Response to Defendant's Motion for Postconviction Relief Pursuant to Fla. R. Crim. P. 3.850" (copy at Ex. G, pp. 168-78))). The state court found that the trial transcript conclusively showed defense counsel *did* move for a judgment of acquittal *and* directed verdict arguing that the State failed to meet its burden of proving the charges against petitioner. (Ex. G, p. 168 (*citing* Trial Tr. at 148)). The court further found that to the extent petitioner faulted defense counsel for failing to make the specific argument that petitioner was not under a valid arrest because his arrest was the fruit of an illegal search (i.e., one that violated the Fourth Amendment), such an argument would not have resulted in dismissal of the charges or a judgment of acquittal. The court explained:

> It has been held that voluntary consent of a third-party, who has apparent authority over shared premises, is a valid exception to the warrant requirement. *See* U.S. v. Matlock, 415 U.S. 164, 171 (1974); *see also* U.S. v. Wright, 971 F.2d 176, 180 (Fla. 8th DCA 1992 [sic]) (valid consent may be given by a third party with common authority over the premises.) Douglas Tucker testified at trial that he had been living with the defendant for a few weeks and when law enforcement arrived to arrest the defendant, he was sleeping on the couch. Trial Transcript p. 125 ¶ 23-25 p. 126 ¶ 23-25. Testimony elicited at trial has shown that Douglas Tucker did have "common authority over the premises" on September 28, 2004 and gave his voluntary third-party consent for law enforcement to enter and search the mobile home. However, as stated above, consent is an exception to the warrant requirement. Law enforcement in this case had knowledge of a pick-up

order (capias warrant) to take defendant into custody, issued by Judge Kelvin Wells (discussed in Ground II) on September 28, 2004, and arrested the defendant pursuant to that order. <u>Trial Transcript</u> p. 27 ¶ 12-16. Consent by the homeowner (Defendant) or a third-party (Douglas Tucker) was not required.

The record conclusively shows that trial counsel did move for a directed verdict and a judgement [sic] of acquittal, thus defendant's analysis under <u>Strickland</u> and alleged factual evidence in his original 3.850 motion does not constitute a legally sufficient basis to support a motion for postconviction relief. Defendant has failed to prove prejudice stemming from trial counsel's performance under <u>Strickland</u>. Defendant has failed to show that, had trial counsel filed a motion to dismiss, the outcome of the proceedings would have been altered. There was a valid pick-up order issued to take defendant into custody, and the defendant was lawfully arrested in his home pursuant to this order. In the alternative, the trial record refutes any claim by defendant that his live-in guest, Douglas Tucker, did not have "common authority over the premises" at the time he gave his consent.

(Ex. G, pp. 169-70). The First DCA summarily affirmed.

The record amply supports the state court's finding that, contrary to petitioner's allegation, defense counsel *did* move for a judgment of acquittal and directed verdict. (Ex. B, pp. 148-49). Petitioner's suggestion that defense counsel failed to challenge the sufficiency of the evidence is conclusively rebutted by the record.

The state court also concluded, reasonably, that petitioner failed to show there was a reasonable probability the result of his trial would have been different had counsel sought dismissal of the charges on the "illegal search" ground petitioner proposes. With regard to the drug charge, even a meritorious "illegal search" argument would not have resulted in dismissal of the charge, because that is not the proper remedy for a Fourth Amendment violation. The Supreme Court explained in

*United States v. Crews*, 445 U.S. 463, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980):

> Insofar as [the defendant] challenges his own presence at trial, he cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. The exclusionary principle . . . delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness. [The defendant] is not himself a suppressible "fruit," and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.

445 U.S. at 474, 100 S. Ct. at 1251 (citations omitted). Further, as explained below, even a motion to suppress the drug evidence would not have been successful. *See* discussion *infra* pp. 15-16 and Ground Two.

As to the Escape charge, in Florida the crime of Escape has three elements: (1) petitioner was under arrest and in the lawful custody of a law enforcement official, (2) while a prisoner, petitioner was being transported to or from a place of confinement and (3) petitioner escaped or attempted to escape by intending to avoid lawful confinement. *Herbert v. State*, 962 So. 2d 1068, 1069-70 (Fla. 4th DCA 2007) ("The crime of 'escape' is defined to include the circumstance when a 'prisoner' 'being transported to or from a place of confinement' 'escapes . . . from such confinement.' A 'prisoner' is defined for purposes of chapter 944 to include 'any person who is under . . . criminal arrest and in the lawful custody of any law enforcement official.'") (citations omitted); *State v. Ramsey*, 475 So. 2d 671, 672 (Fla. 1985) (holding that Florida's Escape statute criminalizes an individual's flight following an arrest). An arrest, or "lawful custody" exists, such that an Escape conviction can be sustained, when the following four factors are present:

"(1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him."

*Kyser v. State*, 533 So. 2d 285, 287 (Fla. 1988) (*quoting Melton v. State*, 75 So. 2d 291, 294 (Fla. 1954)). "'[T]ransportation to a place of confinement' begins at the time the suspect is placed under arrest.'" *Ramsey*, 475 So. 2d at 672 (*quoting* Judge Orfinger's special concurrence in *State v. Iafornaro*, 447 So. 2d 961, 962 (Fla. 5th DCA 1984)). The unlawful nature of custody is an affirmative defense that can be raised to a charge of Escape. *State v. Williams*, 444 So. 2d 13, 15 (Fla. 1984).

Petitioner's "illegal search" argument did not provide a viable basis for counsel to move to dismiss the Escape charge, because the State's evidence did not establish the affirmative defense of unlawful custody. To the contrary, as the state court determined, Deputy Howell's and Officer's Johnson's testimony established petitioner's lawful custody. *See* discussion *supra* Background and Procedural History p. 2; *see also, e.g., Moncrieffe v. State*, 55 So. 3d 736, 740-41 (Fla. 4th DCA 2011) (holding that trial court erred in denying defendant's motion to dismiss Escape charge, where evidence presented by the *State* demonstrated the unlawfulness of defendant's arrest and ensuing custody, and established the defendant's affirmative defense to the charge); *B.D.K. v. State*, 743 So. 2d 1155, 1157-58 (Fla. 2d DCA 1999) (holding that trial court should have granted defendant's motion for judgment of acquittal on Escape charge where, although defendant presented no evidence, the *State's* evidence established defendant's affirmative defense of unlawful custody).

Defense counsel could not have sought dismissal of the Escape charge on the grounds that the officers' search of petitioner's home was illegal.

Even considering *all* of the evidence adduced at trial (including that presented by the defense), the state court reasonably concluded that petitioner failed to establish ineffective assistance, because a motion for judgment of acquittal on petitioner's "illegal search" theory would not have succeeded. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1383, 388, 63 L. Ed. 2d 1371 (1980). Deputy Howell had a pick-up order issued by Judge Wells authorizing petitioner's arrest. (Doc. 20, Ex. B, pp. 27, 34). The order was issued pursuant to Florida Rule of Criminal Procedure 3.131(g)(3), which allows a court to revoke a defendant's bond and direct his commitment. (Ex. G, pp. 185-86). The defense presented evidence, through cross-examination of Officer Johnson and testimony of defense witness Douglas Tucker, that when Deputy Howell knocked on the door of petitioner's residence, Douglas Tucker answered. (Ex. B, pp. 57, 125). Douglas Tucker had been living with petitioner for one-to-two weeks, and was asleep on the couch when the officers arrived. (*Id*., pp. 57, 125-29). Tucker told the officers that petitioner was at his brother's house. (*Id*., pp. 125-29). The officers went to Billy Blane's residence and no one was home. The officers returned to petitioner's residence and spoke to Tucker again. This time, as Howell spoke to Tucker, Officer Johnson heard noises coming from inside the trailer. (*Id*., p. 59). Tucker "didn't want to hide nothing" from the officers and invited them to "go through the house and look for [petitioner]." (*Id*., p. 129). The officers were authorized to enter and search

petitioner's trailer not only under the authority of *Payton*, but also because they had valid third-party consent from Tucker.  *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990) (holding that a warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of "unreasonable searches and seizures" if the officers have obtained the consent of a third party who possesses common authority over the premises, or whom the police, at the time of the entry, reasonably believe to possess common authority over the premises).

Petitioner's proposed argument provided no arguable basis for defense counsel to challenge the State's prosecution of petitioner or the sufficiency of the State's evidence.  Counsel cannot be deemed ineffective for failing to preserve or argue a meritless claim.  *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *see also Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Petitioner argues for the first time in his reply, after conceding in his habeas petition that Judge Wells' pick-up order existed at the time of his arrest (doc. 1, p. 3), that the pick-up order did *not* exist at the time of his arrest.  (Doc. 25).  Petitioner attempts to support this assertion by attaching a copy of an arrest warrant signed in October of 2004.  (*Id*., Ex. A).  This warrant is part of the state court record (doc. 20,

Ex. A, pp. 1-2), and was identified by respondent as the warrant under which Howell arrested petitioner (doc. 20, pp. 16-17, 18, 20). The October 2004 warrant, however, was not the pick-up order Deputy Howell and Officer Johnson were executing. The October 2004 warrant was based on petitioner's escape and drug charges, and was issued *after* petitioner escaped. The October 2004 warrant was served on petitioner on January 14, 2005, once petitioner was extradited from Georgia to Walton County. (Doc. 20, Ex. A, pp. 1-9). The pick-up order that served the basis for petitioner's arrest by Howell and Johnson on September 28, 2004, was issued on September 28, 2004 by Judge Wells in revoking petitioner's bond in Walton County Case No. 04-CF-25. (Ex. G, pp. 185-86 (State's Response to Petitioner's Rule 3.850 Motion, Attachment A)). The October 2004 warrant does not rebut the state court's finding that Deputy Howell and Officer Johnson had a valid warrant/pick-up order authorizing petitioner's arrest when they went to petitioner's home on September 28, 2004.

The state court's rejection of petitioner's claim was not contrary to *Strickland*, was not an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground One.

<u>Ground Two</u>  <u>Counsel Was Ineffective For Failing To Challenge Third Party Consent To Enter Petitioner's Residence</u>

Petitioner claims defense counsel was ineffective for "failing to challenge the warrentless [sic] search of petitioners [sic] home and by failing to suppress evidence obtained through a warrantless search which made the obtained evidence fruit of the poisonous tree." (Doc. 1, p. 4). Petitioner alleges the same facts as above to support this claim – that police did not have a search warrant for petitioner's home and that

Mr. Tucker did not have authority to consent to the search of petitioner's home.
Petitioner does not identify what evidence should have been suppressed. Petitioner
raised this claim in his Rule 3.850 proceeding as "Issue Two". There, petitioner
argued that counsel should have moved to suppress "the evidence of arrest." (Ex. G,
p. 10 ¶ 32). The state court denied relief on Issue Two as follows:

> As defendant's second ground for postconviction relief, defendant
> claims that trial counsel rendered ineffective assistance of counsel by
> failing to demonstrate that law enforcement failed to obtain a search
> warrant, and that trial counsel failed to file a motion to suppress on this
> issue. Defendant's second ground is without merit. Law enforcement
> had knowledge of a pick-up order to take the defendant into custody at
> the time they entered defendant's mobile home and at the time of arrest.
> *See* Attachment "A" to State's Order to Show Cause Response
> (hereinafter "OSC Response"). Furthermore, Sergeant Travis Howell
> testified at trial that it was "common practice" to receive pick-up order
> information from dispatch, and that he did so in this case. Trial
> Transcript p. 47 ¶ 9-12; *See also* MaCray v. State, 496 So.2d 919 (Fla.
> 2nd DCA 1986) (law enforcement access of capias warrants through in-
> car computer).

> On September 28, 2004 a pick-up order was issued by Judge
> Kelvin Wells, after the State filed a motion to revoke bond in an
> unrelated case (04-CF-25), based on the alleged fact that the defendant
> forged a marriage license in an attempt to prevent his wife's testimony
> at trial. *See* Attachment "A" to State's OSC Response. It has been held
> that, absent exigent circumstances, an arrest inside a residence must be
> conducted pursuant to a warrant or consensual entry. Graham v. State,
> 406 So. 2d 503, 505 (Fla App. 1981). Furthermore, pursuant to U.S.
> Const Amend. IV, it is per se unreasonable to conduct an arrest without
> a warrant. However, in the instant case, a pick-up order (*order to take
> defendant into custody*) was issued by the court and properly executed
> by law enforcement on the night of defendant's arrest. Thus, the
> defendant was lawfully arrested in his residence pursuant to the
> aforementioned pick-up order and any allegations or claims by the

defendant of law enforcement coercion, lies, or ineffective third-party consent is immaterial. The Court in *Sloan v. State*, 429 So.2d 354, 359 (Fla. 1st DCA 1983), a case with similar facts to the instant case (defendant in Sloan was arrested inside his mobile home after consent by a co-tenant who was unaware of the capias warrant), held that "that appellant was lawfully placed under arrest on the capias immediately upon his removal from the mobile home, even if there were irregularities in the officers' entry and seizure of appellant inside." In fact, defendant states in his original motion for postconviction relief that "a pick-up order was issued." *See* Original 3.850 Motion, at p. 9.

The defendant has failed to establish prejudice according to Strickland. In order to establish prejudice, the defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687 (1984); *See also* Johnson v. State, 921 So.2d 490 (2005) ("reasonable probability" that result of proceeding would have been different, is a probability sufficient to undermine the confidence of the outcome.") Due to the legal sufficiency of the pick-up order issued on September 28, 2004 and the validity of the defendant's arrest pursuant to said order, the defendant has failed to show that the result of the proceeding would have been different or that counsels [sic] alleged unprofessional errors have undermined the confidence in the outcome of the case. It cannot be said that trial counsel's choice not to file a motion to suppress was so erroneous to establish that counsel was lacking to violate the Sixth Amendment nor that counsel's performance prejudiced the Defendant of a fair trial required by Strickland.

(Ex. G, pp. 170-72). The First DCA summarily affirmed.

"To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable

evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (*citing Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83 (1986)).

As this Court explained in Ground One, and as the state postconviction court explained in denying relief on this claim, petitioner's Fourth Amendment claim is without merit. The officers were not required to have a search warrant to enter petitioner's home because they had an order directing them to take petitioner into custody and reason to believe petitioner was in his residence. Counsel was not ineffective for failing to file a motion to suppress based on the lack of a search warrant. The state court's rejection of petitioner's claim was not contrary to *Strickland*, was not an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three      Counsel Was Ineffective For Failing To Challenge The Legality Of Petitioner's Confinement

Petitioner claims defense counsel was ineffective "in failing to challenge petitioners [sic] escape charge based on unlawful conditions of confinement" (doc. 1, p. 4), and for failing "to seek the dismissal of th[e] charge" (*id*., p. 5). Petitioner alleges the following in support of this claim: "Because the search conducted by police of petitioners [sic] home was illegal, the search and subsequent discovery and arrest of petitioner in the back bedroom of his home, constituted an illegal arrest. Because petitioner was not in lawful custody, there can be no charge of escape." (*Id*., p. 4). Petitioner presented this claim as "Issue Three" in his Rule 3.850 motion.

The state court denied relief on "Issue Three" as follows:

> The Florida Supreme Court has ruled that "when it is so obvious from the face of the record that trial counsel's strategy not to present a

. . . defense is very clearly a tactical decision well within the discretion of counsel, no evidentiary hearing is necessary." Hannon v. State, 941 So.2d 1109, 1138 (Fla. 2006). The Defendant in the present motion was represented by private counsel and subsequently convicted of escape and now moves to set aside that conviction based partly on private counsel's choice not to present an escape defense of unlawful confinement.

Defendant correctly asserts, in his original 3.850 motion, that unlawful confinement is a defense to an escape charge, however, on September 28, 2004, there was nothing unlawful about the defendant's arrest nor his confinement. Under State v. Ramsey, 475 So.2d 671 (Fla. 1985) the court held that for a conviction under the escape statute, the state need show only (1) a right to legal custody, and (2) a conscious and intentional act of the defendant in leaving the established area of such custody. Id. at 672. Once Deputy Howell and C.O. Johnson found defendant hiding inside his home (pursuant to the valid pick-up order) they placed him under arrest and informed him that he was under arrest. Trial Transcript p. 28 ¶ 1-15. Furthermore, according to the testimony of Deputy Howell, the defendant understood that he was under arrest, and was placed in handcuffs. Id. Defendant complained about pain in his arm and requested that he be handcuffed in front (showing that Defendant understood he was under arrest). Id. The testimony elicited at trial by the two arresting officers prove that there was a legal right to custody pursuant to the pick-up order issued by Judge Kelvin Wells after revocation of defendant's bond. The trial testimony also proves that the defendant was in custody – he was told that he was "under arrest" and was placed in handcuffs. Under Melton v. State, 75 So.2d 291 (Fla. 1954):

> [A]n arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested: (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose

then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it si the intention of the arresting officer then and there to arrest and detain him. Id. at 294.

The arrest of the defendant satisfies these elements. Deputy Howell communicated his intention to place defendant under arrest. Trial Transcript p. 28 ¶ 6-8. Defendant understood that he was under arrest, and there was a actual seizure or detention of the defendant. Id. at ¶ 9-15. Thus, there was no unlawful confinement of the defendant on September 28, 2004. It cannot be said that trial counsel's choice not to pursue an unlawful confinement defense to escape was so erroneous to establish that counsel was ineffective so as to violate the Sixth Amendment nor that counsel's performance prejudiced the Defendant of a fair trial required by Strickland. The lawful arrest of, and custodial situation involving the defendant eviscerates the ability of trial counsel to present an unlawful confinement defense to the charge of escape.

(Ex. G, pp. 173-74). The First DCA summarily affirmed.

This claim is a mere re-phrasing of the issue petitioner raised in Ground One above. Petitioner asserts that counsel should have moved to the dismiss the Escape charge on the grounds that his arrest was unlawful because it derived from the officers' illegal search of his home. Petitioner is correct that the unlawfulness of the custody is an affirmative defense to the charge of Escape. *State v. Williams*, 444 So. 2d at 15. Petitioner's "illegal search" argument, however, would not have succeeded on a motion to dismiss or a motion for judgment of acquittal. *See* discussion *supra* Ground One. The state court's rejection of petitioner's claim was not contrary to *Strickland*, was not an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Three.

<u>Ground Four</u>          Counsel Was Ineffective For Failing To File A Motion To Suppress Illegally Obtained Evidence

Petitioner claims counsel was ineffective for failing to file a motion to suppress based on the officers' search of his home without a search warrant. Petitioner argues that "[b]ecause the search of petitioners [sic] home amounted to a warrantless search the subsequent arrest of petitioner was also illegal. Therefore, the search of petitioners [sic] person by police after the unlawful arrest, which produced methamphetamine was tainted evidence which should have, and would have been suppressed had counsel filed a motion to suppress." (Doc. 1, p. 5). Petitioner raised this claim as "Issue Four" in his postconviction motion, where he argued that counsel should have moved to suppress the methamphetamine found in his pants pocket. (Ex. G, pp. 14-15). The state court denied relief as follows:

> Defendant was placed under arrest on September 28, 2004, pursuant to a pick-up order issued by Judge Kelvin Wells after defendant's bond was revoked on case (04-CF-25). *See* **Ground II**. The subsequent search of defendant was warranted as a search incident to arrest. See <u>United States v. Robinson</u>, 414 U.S. 218, 235 (1973) (holding that in the case of a lawful custodial arrest, a full search of the defendant is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.) During that search (after defendant was placed under arrest and handcuffed) law enforcement found three vials containing methamphetamine on the defendant's person. <u>Trial Transcript</u> p. 28 ¶ 14-18.

> Thus, the search of defendant incident to his arrest, was lawful and the methamphetamine vials found by Deputy Howell were legally seized. It cannot be said that trial counsel's choice not to file a motion to suppress on this issue was so erroneous to establish that counsel was deficient so as to violate the Sixth Amendment nor that counsel's performance prejudiced the Defendant of a fair trial required by

Strickland.  The valid arrest and search of defendant incident to that arrest prevented trial counsel from effectively moving to suppress the evidence obtained form the defendant, and would not have rendered the outcome of the case.

(Ex. G, pp. 174-75).  The First DCA summarily affirmed.

The state court reasonably concluded that petitioner's ineffective assistance claim failed because petitioner's proffered Fourth Amendment claim had no merit. The officers had a valid pick-up order authorizing petitioner's arrest.  The warrant/pick-up order carried with it the limited authority to enter petitioner's dwelling where there was reason to believe petitioner was within that dwelling. *Payton, supra*.  The officers also had Douglas Tucker's third party consent to search the dwelling.  *Rodriguez, supra*.  Once petitioner was located and arrested, Deputy Howell was authorized to search petitioner's person incident to petitioner's arrest. *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973) (holding that an unwarranted search incident to a custodial arrest constituted an exception to the warrant requirement of the Fourth Amendment where the search was necessary to assure an officer's safety or preserve evidence).  Here, of course, the contraband was found, not merely near petitioner, but on his person.  The state court's rejection of petitioner's claim was not contrary to *Strickland*, was not an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Four.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Kenneth S. Tucker has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Richard Alford Blane* in the Circuit Court for Walton County, Florida, Case No. 05-CF-57 be DENIED, and the clerk directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 29th day of October, 2012.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).